United States District Court
Southern District of Texas
**ENTERED**
June 04, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| TRANCIT RODRIGUEZ, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-cv-00209 |
| | § | |
| PHILLIPS 66 COMPANY, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM AND RECOMMENDATION**

Plaintiff Trancit Rodriguez ("Rodriguez") filed this lawsuit against Defendant Phillips 66 Company ("Phillips 66"), alleging that Phillips 66 violated federal and state anti-discrimination and retaliation laws. Presently before me is Phillips 66's Motion for Summary Judgment. *See* Dkt. 19. After reviewing the summary judgment briefing, examining the record, and analyzing the relevant case law, I recommend that the Motion for Summary Judgment be **GRANTED,** and this case dismissed.

### **BACKGROUND**

Phillips 66 hired Rodriguez in March 2011 to work as an Operator at the Sweeny Refinery in Brazoria County. He worked there until his termination on June 8, 2018. Phillips 66 maintains that it terminated Rodriguez because, during the last few years of his employment, Rodriguez engaged in a pattern of unprofessional conduct and aggressive behavior toward other employees. Phillips 66 also claims that Rodriguez misrepresented his absences.

By way of example, while on leave under the Family and Medical Leave Act ("FMLA") for a hand injury in the spring of 2017, Rodriguez reportedly engaged in leisure activities—driving to the beach and fishing—wholly inconsistent with his purported medical condition. Based on this conduct, Phillips 66 issued Rodriguez a Final Written Warning on April 17, 2017, with an accompanying seven-day

suspension. At the meeting in which he was informed of the suspension, Rodriguez became very angry, shouted, and used profanity toward several Phillips 66 employees.[1] The situation between Rodriguez and Phillips 66 came to a head in April and May 2018.

On April 1, 2018, Rodriguez informed his supervisor that he needed an emergency vacation for his next shift on April 2, 2018, because his wife had been in a car accident. Based on Rodriguez's representation, his supervisor approved the request. Rodriguez was already approved to miss his scheduled shifts on April 6, 7, and 8 for vacation days. His next scheduled workday was April 10, 2018, but he called in sick that day. Rodriguez also did not show up for his next four scheduled shifts on April 11, 12, 16, or 17.

On April 17, 2018, Rodriguez's physician supplied Phillips 66 with an Employee Health Report,[2] noting that Rodriguez missed work due to a back and neck contusion. The doctor said Rodriguez could return to his job on April 21, 2018. The Employee Health Report did not provide any information about the cause of Rodriguez's injury, his physical limitations, or a treatment plan. After receiving the Employee Health Report, an Occupational Health Nurse at the Sweeny Refinery reached out to Rodriguez to check on his condition. Rodriguez told her that he was injured in a car accident.[3]

On April 30, 2018, Rodriguez's physician provided Phillips 66 with a second Employee Health Report. Much like before, this Employee Health Report merely noted that Rodriguez suffered from a neck contusion without providing any

---

[1] In January 2018, Rodriguez once again lost his cool, shouting, and behaving aggressively and unprofessionally towards colleagues. He was allowed to return to work once he calmed down.

[2] An Employee Health Report is a form that Phillips 66 requires employees who request leaves of absences to submit to their physicians to complete and return to the company.

[3] This statement was false. After this case was filed, Rodriguez admitted at deposition that he was not in a car accident. Instead, he maintains that he suffered a neck contusion when he slipped and fell at a McDonald's.

additional information about the cause of the injury, any physical limitations, or treatment plan. The second Employee Health Report did not list a return-to-work date.

Rodriguez requested leave under the FMLA, and Phillips 66 approved FMLA leave backdated to April 10, 2018. At the same time, Phillips 66 asked Rodriguez to provide additional information to support his request for FMLA leave. Specifically, Phillips 66 told Rodriguez that he needed to attend a medical examination and submit paperwork explaining his condition, activities limiting his condition, and his ability to return to work. Rodriguez did not comply with any of Phillips 66's requests.

Finding the circumstances surrounding Rodriguez's April 2, 2018 absence to be somewhat suspicious, Phillips 66 requested that Rodriguez provide the company with documentation supporting his wife's alleged car accident for which he took emergency vacation. In an alarming trend, Rodriguez again did not respond to the company's request.

On May 21, 2018, Rodriguez's doctor released him to return to work. After Rodriguez passed a fitness for duty exam, the Phillips 66 medical department cleared him to return to work. On May 25, 2018, Rodriguez went to work for the first time since his alleged injury. Before starting his shift, Rodriguez sat down with Krystle King ("King"), the Human Resources Business Partner, and Adam Davidson ("Davidson"), a Front-Line Supervisor. They explained to Rodriguez that the company had the right to request documentation concerning his absence from work, and again asked him to provide documentary evidence to support his April 2, 2018 emergency vacation request. According to King,

> Rodriguez immediately became argumentative. Mr. Rodriguez became aggressive, yelled, and reached over my desk and pointed his finger at me. Mr. Rodriguez refused to lower his voice even though I asked him several times. . . . Based on Mr. Rodriguez's behavior, I instructed him that he would be placed on administrative leave and a Company representative would follow-up with him. As a result of Mr. Rodriguez's aggressive behavior, Mr. Davidson escorted Mr.

3

> Rodriguez off the property and at that time, Mr. Rodriguez was placed on paid administrative leave so the matter could be reviewed.

Dkt. 19-7 at 3. After the May 25, 2018 meeting, Davidson provided a written statement corroborating that King twice asked Rodriguez to lower his voice, and that Rodriguez failed to comply. Davidson also noted that King went out of her way to inform Rodriguez that he was being insubordinate and could be sent home, to which Rodriguez made no objection.

A few days after Rodriguez was put on administrative leave, Rodriguez submitted a complaint to a Phillips 66 hotline, alleging that King harassed and discriminated against him. Phillips 66 promptly initiated an internal investigation and interviewed several Phillips 66 employees. Although the internal investigator called Rodriguez three separate times to obtain his version of the events, Rodriguez never followed-up to tell his side of the story. The internal investigation concluded that Rodriguez behaved aggressively and inappropriately during the May 25, 2018 meeting by leaning across King's desk, pointing his finger in her face, and refusing to sit down when requested. "After reviewing the information King and Davidson provided as well as Rodriguez's disciplinary history, specifically, the fact that he was on a Final Written Warning," Michael Saiz, the Human Resources Manager for the Sweeny Refinery, "made the decision to terminate Mr. Rodriguez for inappropriate conduct and aggressive behavior while on a Final Written Warning." Dkt. 19-1 at 3. Phillips 66 terminated Rodriguez's employment effective June 8, 2018.

In this lawsuit, Rodriguez brings several causes of action against Phillips 66: (1) disability discrimination in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"); (2) retaliation in violation of the ADA; (3) interference in violation of the FMLA; (4) retaliation in violation of the FMLA; (5) disability discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA"); and (6) retaliation in violation of the TCHRA. Phillips 66 has filed a

4

Motion for Summary Judgment on all claims, asking me to dismiss this lawsuit in its entirety.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

The movant "bears the initial responsibility of informing the district court of the basis for its motion." *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quotation omitted). To defeat a motion for summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Hous. Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-CV-1737, 2019 WL 6119485, at *1 (S.D. Tex. Nov. 18, 2019).

## DISCUSSION

A.   RODRIGUEZ'S DISCRIMINATION CLAIMS

The ADA is a "broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *Frame*

5

*v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (cleaned up). To that end, Title I of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability" by, among other things, terminating an individual's employment. 42 U.S.C. § 12112(a).

When analyzing an ADA discrimination claim, I must utilize the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Under this framework, a plaintiff must first establish a *prima facie* case of disability. *See id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its employment decision. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995). The defendant's burden is low—it is merely one of production not persuasion. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257–58 (1981); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995) ("If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993))). If the employer articulates a legitimate, non-discriminatory reason for its employment decision, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804.

### 1. Rodriguez Cannot Make A *Prima Facie* Case Of Discrimination Under The ADA Or The TCHRA.

To make a *prima facie* case of discrimination under the ADA, Rodriguez must show that (1) he is disabled, has a record of having a disability, or is regarded as disabled; (2) he is qualified for his position; and (3) he suffered an adverse employment action because of his disability. *LHC Grp.*, 773 F.3d at 697. The *prima facie* case under the TCHRA is the same. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020) ("Because TCHRA parallels the language of

6

the ADA, Texas courts follow ADA law in evaluating TCHRA discrimination claims." (cleaned up)). Rodriguez has failed to make a *prima facie* case of discrimination under both the ADA and the TCHRA because he cannot show that he was disabled.

> The ADA defines "disability" as:
>
> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). *See also* TEX. LAB. CODE § 21.002(6) (providing identical definition of disability under the TCHRA). "[T]o be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chem. Corp.*, 570 F.3d 606, 614 (5th Cir. 2009). Under the ADA, major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). *See also* TEX. LAB. CODE § 21.002(11-a) (providing same definition under TCHRA). The burden is on Rodriguez to show that he is, in fact, disabled, has a record of having a disability, or is regarded as disabled. *See Chevron Phillips*, 570 F.3d at 615.

Rodriguez avers that he "suffered from/was perceived to suffer from a disability" called spondylosis. Dkt. 20 at 19. Spondylosis is defined as "noninflammatory degenerative disease of the spine resulting in abnormal bone development around the vertebrae and reduced mobility of the intervertebral joints." *Spondylosis*, ENCYCLOPEDIA BRITANNICA, https://www.britannica.com/science/spondylosis (last visited June 3, 2021). A single doctor note offered by Rodriguez indicates that he had "some spondylosis." Dkt. 20-5 at 2. Without evidence indicating how spondylosis effects his ability to perform major life activities, Rodriguez has failed to show that he is disabled under the ADA or TCHRA. *See Taylor v. Principal Fin.*

7

*Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." (quoting 29 C.F.R. 1630.2(j), App. (1995)); *Weed v. Sidewinder Drilling, Inc.*, 245 F. Supp. 3d 826, 833 (S.D. Tex. 2017) ("Simply having an impairment is insufficient to make one disabled under the statute; a plaintiff must also show that the impairment substantially limits a major life activity."); *Trabulsy v. Polk Cmty. Coll.*, 8:08-CV-02271-T-33AEP, 2010 WL 1837909, at *2 (M.D. Fla. May 3, 2010) (declining to find individual diagnosed with spondylosis disabled because he failed to demonstrate the condition limited a major life activity).

  My thorough review of the summary judgment record reveals no evidence that Rodriguez's spondylosis substantially limited him in performing a major life activity. In fact, the summary judgment evidence suggests the exact opposite: Rodriguez was fully capable of performing normal daily activities. Two medical professionals—Rodriguez's physician and Phillip 66's medical department—cleared Rodriguez to return to work without limitations or accommodations. And then Rodriguez showed up on May 25, 2018, ready, willing, and able to resume his job responsibilities at the Sweeny Plant. It's hard to argue with a straight face that Rodriguez was limited in performing major life activities when he readily admits that he was fully capable of returning to work. *See* Dkt. 20-2 at 3 ("I was cleared by my physician to return to work on May 21, 2018 and I successfully completed my fitness-for-duty certification with Phillips 66 on May 24th. I reported to work on May 25, 2018.").

  In response to the motion for summary judgment, Rodriguez asserts that spondylosis "impacted his ability to work and walk." Dkt. 20 at 19. But Rodriguez has presented absolutely no evidence to support this naked assertion. Because it is well-established that unsworn pleadings do not constitute competent summary judgment evidence, there is no evidentiary support for Rodriguez's assertion that spondylosis limits his ability to perform a major life activity. *See Johnston v. City*

*of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." (citation omitted)).

As a last-ditch effort to salvage his discrimination claim, Rodriguez asserts that Phillips 66 "perceived him to be disabled." Dkt. 20 at 19. But, once again, Rodriguez presents no competent summary judgment evidence to suggest that Phillips 66 considered him disabled. Contrary to Rodriguez's allegations, it appears that Phillips 66 regarded him as fully able to perform his job duties and responsibilities. Indeed, Phillips 66's own medical professional cleared Rodriguez to return to work. *See* Dkt. 19-7 at 6 (Rodriguez "has been released to full duty by his healthcare provider effective 5/21/18 and completed a fitness for duty exam today. He is cleared to return to work."). The fact that Phillips 66 cleared Rodriguez to return to work without limitation belies any belief on the part of Phillips 66 that Rodriguez was disabled. *See Moore v. Animal Health Int'l, Inc.*, No. 2:18-CV-12-D-BR, 2019 WL 4889826, at *5 (N.D. Tex. June 21, 2019) (holding that employee failed to show employer regarded her as disabled when employer released employee to return to work); *Butler v. Potter*, 345 F. Supp. 2d 844, 852 (E.D. Tenn. 2004) (same).

In sum, Rodriguez has failed to prove he had a disability as defined under the ADA and TCHRA—a necessary element of his *prima facie* ADA and TCHRA discrimination case. As a result, his ADA and TCHRA disability discrimination claims fall by the wayside. *See Willis v. Noble Env't Power, LLC*, 143 F. Supp. 3d 475, 479 (N.D. Tex. 2015) ("Failure to establish an actual or perceived disability is fatal to a plaintiff's case, and no further consideration is required." (cleaned up)).

### 2. Rodriguez Cannot Establish That Phillips 66's Legitimate, Non-Discriminatory Reason Is Mere Pretext For Unlawful Discrimination.

Even if Rodriguez could establish a *prima facie* disability discrimination case, the burden would then shift to Phillips 66 to articulate a legitimate, non-discriminatory reason for terminating Rodriguez's employment. *See Nall v. BNSF*

9

*Ry. Co.*, 917 F.3d 335, 342 (5th Cir. 2019). In this case, Phillips 66 contends that it terminated Rodriguez because he displayed aggressive and unprofessional conduct toward his co-workers. Time and time again, courts have held that an employer has articulated a legitimate, non-discriminatory reason for an employment action when it seeks to combat aggressive, disruptive, and unprofessional behavior. *See Ramroop v. Cooper Cameron Corp.*, 202 F. App'x 1, 2 (5th Cir. 2006) ("aggressive and disruptive behavior" is a legitimate, non-discriminatory reason to terminate an employee); *Harris v. Dall. Cnty. Hosp. Dist.*, No. 3:14-CV-3663-D, 2016 WL 2914847, at *10 (N.D. Tex. May 19, 2016) ("aggressive, unprofessional, and disruptive behavior" constitutes a legitimate, non-discriminatory reason to fire an employee). Accordingly, Phillips 66 easily meets its burden.

Having determined that Phillips 66 has provided a legitimate, non-discriminatory reason for ending Rodriguez's employment, the burden shifts back to Rodriguez to show that Phillips 66's proffered reason is actually a pretext for unlawful discrimination. "At the end of the day, the pretext inquiry asks whether there is sufficient evidence 'demonstrating the falsity of the employer's explanation, taken together with the prima facie case,' to allow the jury to find that discrimination was the but-for cause of the termination." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)).

Rodriguez advances three arguments as to why Phillips 66's purported reason for his termination is pretextual. First, Rodriguez contends that pretext exists because Phillips 66 harassed him by hiring an external investigator to verify the legitimacy of his absences from work. Second, Rodriguez maintains that Phillips 66's failure in the past to discipline him for aggressive and unprofessional behavior establishes pretext. Third and finally, Rodriguez claims that "the temporal proximity between his 2017 FMLA and his Final Written Warning (seven

days) and his 2018 FMLA leave and his termination (14 days)"[4] suggests that Phillips 66's proffered reason for his termination is false. Dkt. 20 at 13.

Based on my review of the evidence presented, I conclude that Rodriguez falls short of creating a genuine issue of material fact on the pretext issue. Rodriguez first claims that Phillips 66's hiring of a private investigator to determine whether his absence requests were legitimate somehow casts doubt on its proffered reason for his termination. The Fifth Circuit has rejected this argument before, and I will do the same. *See Williams v. Lyondell-Citgo Refin. Co.*, 247 F. App'x 466, 471 n.7 (5th Cir. 2007) (explaining that an employer's use of "an investigator only *supports* its claim that it honestly believed [the employee] was lying"). As an aside, it is quite ironic that Rodriguez complains about Phillips 66 hiring an external investigator when it turns out that the company's decision to hire an investigator was completely justified. Rodriguez admitted in this lawsuit that the reason he gave for his April 2, 2018 emergency vacation request (that his wife was in a car accident) was false. Simply stated, Phillips 66's legitimate inquiries into the truthfulness of Rodriguez's absences do not establish pretext.

Next, Rodriguez asserts that Phillips 66's failure to issue prior discipline for his aggressive and unprofessional behavior establishes pretext. This argument is unavailing for a number of reasons. To begin, the summary judgment evidence contradicts Rodriguez's assertion. As noted, Phillips 66 issued Rodriguez a Final Written Warning in April 2017 for his improper conduct. That Final Written Warning carried with it a seven-day suspension. If that's not prior discipline, I'm

---

[4] I am a bit confused by Rodriguez's assertion that the time period between his 2018 FMLA leave and his ultimate termination was 14 days. The summary judgment evidence indicates that on April 18, 2018, Phillips 66 approved Rodriguez's leave as FMLA qualifying leave backdated to April 10, 2018. Phillips 66 then terminated Rodriguez on June 8, 2018. By my count, 51 days (not 14 days) elapsed from the April 18, 2018 date Rodriguez was notified of his FMLA leave to his June 8, 2018 date of termination. Even if I ignore the summary judgment evidence and consider the temporal proximity between Rodriguez's 2018 FMLA leave and his termination to be 14 days, as Rodriguez claims, it makes absolutely no difference for the reasons discussed below.

11

not sure what is. Nonetheless, I will give Rodriguez the benefit of the doubt and assume that Phillips 66 did not issue any prior discipline. The result is the same. It has long been the rule that a district court "is not to engage in second-guessing of an employer's business decisions." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). In that vein, a company should be free to determine when it wants to discipline an employee. An employer's delay in disciplining an employee after it first becomes aware of a problem does not constitute evidence of discriminatory animus unless it is "so irrational or implausible as to suggest a cover-up." *Jarjoura v. Ericsson, Inc.*, 266 F. Supp. 2d 519, 532 (N.D. Tex.), *aff'd*, 82 F. App'x 998 (5th Cir. 2003). There is no such evidence in this case. Accordingly, Phillips 66's failure to discipline Rodriguez in the past is not evidence of pretext in this instance. *See Perches v. Elcom, Inc.*, 500 F. Supp. 2d 684, 694 (W.D. Tex. 2007) ("[T]he fact that Plaintiff was never disciplined for her problems with interpersonal skills does not disprove Defendant's claim that her supervisors thought she had problems with interpersonal skills, or the fact that her co-workers complained about her."). Although it is true that the Fifth Circuit "has held that an employer's failure to follow its own progressive discipline policy can be evidence of pretext, [Rodriguez] has failed to put forth any evidence establishing that [Phillips 66] used such a policy." *Keller v. Coastal Bend Coll.*, 629 F. App'x 596, 602 (5th Cir. 2015).

As far as Rodriguez's temporal proximity argument is concerned, the Fifth Circuit has repeatedly held that "temporal proximity alone is insufficient to survive summary judgment at the pretext stage in the absence of other significant evidence of pretext." *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 564 (5th Cir. 2019) (cleaned up). *See also Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 330 (5th Cir. 1998) ("Timing standing alone is not sufficient absent other evidence of pretext."). Because Rodriguez has failed to provide "other significant evidence of pretext," he has nothing left to stand on aside from temporal proximity. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999). That's not enough. *See Garcia*

12

*v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 243–44 (5th Cir. 2019) ("[T]he pretext stage . . . requires a showing of but-for causation, which requires more than mere temporal proximity.").

Because Rodriguez cannot demonstrate that the legitimate, non-discriminatory reason Phillips 66 offered for terminating Rodriguez was pretextual, Phillips 66 is entitled to summary judgment on the ADA and TCHRA discrimination claims.

### B. RODRIGUEZ'S RETALIATION AND INTERFERENCE CLAIMS

Rodriguez also asserts retaliation claims under the ADA, the TCHRA, and the FMLA, as well as an FMLA interference claim. The familiar *McDonnell Douglas* burden-shifting framework applies to these claims. *See Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019); *Caldwell v. KHOU-TV*, 850 F.3d 237, 245–46 (5th Cir. 2017). To establish a *prima facie* case of retaliation under the ADA, the TCHRA, and the FMLA, Rodriguez must show: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal connection between the protected act and the adverse action. *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) (FMLA and TCHRA); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA). To prove a *prima facie* FMLA interference case, Rodriguez must show that: (1) he was an eligible employee; (2) Phillips 66 was subject to the FMLA's requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer interfered with, restrained, or denied her the benefits to which he was entitled under the FMLA. *See DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018).

Even if I assume, for the sake of argument, that Rodriguez can make out a *prima facie* case of retaliation, Phillips 66 has articulated a legitimate, non-discriminatory reason for its employment action: Rodriguez acted aggressively and unprofessionally.

To avoid summary judgment, Rodriguez must provide "sufficient evidence that [Phillips 66's] proffered reason is a pretext for retaliation." *Nall*, 917 F.3d at

13

349. To establish pretext for his retaliation and interference claims, Rodriguez relies on the same arguments discussed above in connection with his discrimination claim. For the same reasons provided above, Rodriguez is unable to satisfy his burden of establishing pretext. Because Rodriguez has failed to establish pretext, summary judgment is also appropriate on Rodriguez's retaliation and interference claims.

## CONCLUSION

For the reasons explained above, I recommend that Phillip 66's Motion for Summary Judgment (Dkt. 19) be **GRANTED**. This case should be dismissed.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed this 4th day of June 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE